UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-278-F
No. 5:13-CV-279-F

| | | |
|---|---|---|
| CWCAPITAL ASSET | ) | |
| MANAGEMENT, LLC, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BURCAM CAPITAL II, LLC, | ) | |
| Appellee. | ) | |
| | ) | ORDER |
| | ) | |
| BURCAM CAPITAL II, LLC, | ) | |
| Cross-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CWCAPITAL ASSET | ) | |
| MANAGEMENT, LLC, | ) | |
| Cross-Appellee. | ) | |

CWCapital Asset Management, LLC ("the Note Holders")[1] appeals the bankruptcy

court's order denying its motion to dismiss Burcam Captial II ("Burcam")'s Chapter 11

Bankruptcy reorganization plan and the order confirming the plan. Currently before the court is

the Note Holders' motion to stay the bankruptcy proceedings pending appeal [DE-9].[2]

_____

[1] CWC has submitted a consent motion to change the caption of this case because CWC is acting only in its capacity as Special Servicer to U.S. Bank National Association and Bank of America. U.S. Bank and Bank of America, in turn, are acting solely in their capacities as trustees for the promissory note holders. As explained below, the court will ALLOW the consent motion to change the caption. For purposes of this order, the appellants will be referred to as "the Note Holders."

[2] The Note Holders have filed two separate appeals in this case, creating two entirely separate cases in the cm/ecf system. Management of the appeals has been difficult because some motions that apparently apply to both appeals have been filed in only one case. For example, Burcam opposes the

## FACTUAL AND PROCEDURAL HISTORY

Burcam Capital owns a large commercial development in Raleigh, North Carolina.

Burcam obtained two sizeable loans from the Note Holders to purchase the development and, in

return, Burcam executed two promissory notes secured by deeds of trust on the property in favor

of the Note Holders. Burcam filed for Chapter 11 Bankruptcy protection on June 28, 2012. In its

schedules, Burcam lists the two loans, referred to as "Note A" and "Note B" as totaling

$11,453,808.08 on Note A and $782,245.37 on Note B. The Note Holders have filed proofs of

claims in the amount of $14,014,329.16 on Note A and $1,115,569.43 on Note B. The Note

Holders are the only secured creditors in the case, and the property is valued at between $17.3

and $18.5 million. Burcam listed $41,798.54 in unsecured, nonpriority claims on its schedules.

The Note Holders promptly filed a motion to dismiss the bankruptcy case, on the grounds that

Burcam could not confirm the plan.

Burcam's original Chapter 11 plan divided the unsecured claims into two separate

classes:[3] general unsecured claims in class 5 and small unsecured claims in class 6. The plan

provided for payment in full to all creditors. The Note Holders purchased sixteen unsecured

claims and filed rejecting ballots on behalf of each of those claims. The Note Holders purchased

---

motion to stay, which the Note Holders filed in both cases. However, Burcam filed its response brief in
opposition to the stay in only one of the cases: 5:13-CV-279-F, [DE-18]. The parties have filed a joint
motion to consolidate the cases [DE-17], which the court will ALLOW. For purposes of this order, all
the docket entry ["DE"] numbers refer to the docket entries in case number 5:13-CV-278-F, unless the
motion appears only in 5:13-CV-279-F. In the "Conclusion" section, the court will provide the docket
entry numbers for both cases for each relevant motion so the Clerk of Court can locate all the motions
this order addresses. In future cases, counsel may file one appeal and include as separate assignments of
error the separate orders the party wishes to appeal, assuming the party is not precluded from doing so by
the time limitations for filing an appeal. The court will discuss the logistics of filing documents in the
consolidated appeal below.

[3] The secured claims were placed in a separate class.

these unsecured claims for purposes of blocking confirmation of the plan. Only two creditors voted to accept the original plan.

After receiving the ballots, Burcam modified its Chapter 11 plan by creating a third class of unsecured claims consisting entirely of the unsecured claims purchased by the Note Holders. The modified plan proposed a different repayment plan for the Note Holder-purchased class of unsecured claims, as compared to the other classes of unsecured claims. Burcam proposed transforming the Note Holder-purchased unsecured claims into secured claims secured by a deed of trust on the property and repaying those claims at a secured interest rate of 3.75% over the course of ten years.

The modified plan allowed for confirmation because, among other things, at least one impaired class of unsecured creditors voted in favor of the plan. 11 U.S.C. § 1129. The Bankruptcy Court therefore denied Burcam's motion to dismiss the Chapter 11 case and, by separate order, confirmed Burcam's Chapter 11 plan. *In re Burcam Capital II, LLC*, No. 12-04729-8-JRL, 2013 WL 593709 (Bankr. E.D.N.C. Feb. 15, 2013) [DE-1-1]; *In re Burcam Capital II, LLC*, No. 12-04729-8-JRL (Bankr. E.D.N.C. Feb. 26, 2013) (slip opinion) [DE-1-1, case no. 5:13-CV-279-F]. This appeal followed.

## DISCUSSION

The Note Holders request a stay of the bankruptcy proceedings pending appeal [DE-9]. Burcam has filed a response opposing the stay [DE-18, case no. 5:13-CV-279-F]. The matter has been fully briefed and is ripe for disposition.

3

## A. Standard of review

The Federal Rules of Bankruptcy Procedure allow for motions to stay pending appeal. Fed. R. Bankr. P. 8005.[4] The standard of review on a motion to stay pending appeal is similar to the standard for granting a preliminary injunction. *Coler v. Draper*, No. WDQ-12-2020, 2012 WL 5267436, at *3 (D. Md. Oct. 23, 2012); *Cont'l Sec. Corp. v. Shenandoah Nursing Home P'ship*, 188 B.R. 205, 208 (Bankr. W.D. Va. 1995). The moving party must show (1) likelihood of success on the merits; (2) likelihood the moving party will suffer irreparable harm if a stay is not granted; (3) the balance of equities tips in the moving party's favor; and (4) a stay is in the public interest. *Coler*, 2012 WL 5267436, at *3; *see also Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970) (endorsing the above factors as the appropriate standard for deciding a stay pending appeal in a non-bankruptcy context).

Preliminary injunctive relief is an extraordinary measure and the party requesting relief must make a substantial showing on each of the above factors.[5] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991). In light of *Winter v. Natural Resources Defense Council*, 555 U.S. 7

---

[4] Rule 8005 does not provide the standard of review for a motion to stay pending appeal. While the Fourth Circuit has not directly spoken on the issue, the majority of courts to consider the issue have held that it is decided on the same standard as a motion for preliminary injunctive relief. *See, e.g.*, *In re MAC Panel Co.*, No. 98-10952C-11G, 2000 WL 33673784, at *3 (Bankr. M.D.N.C. Mar. 8, 2000); *In re Miraj & Sons, Inc.*, 201 B.R. 23, 26 (Bankr. D. Mass. 1996). The court also notes that Rule 8005 requires that the moving party initially present the motion for stay to the Bankruptcy court. In this case, the Note Holders requested a stay pending appeal from the bankruptcy court, which was denied. *In re Burcam Capital II, LLC*, No. 12-04729-8-JRL, 2013 WL 1187882, at *1 (Bankr. E.D.N.C. Mar. 21, 2013).

[5] For purposes of deciding the instant motion, the court assumes the requirements for obtaining a preliminary injunction and the law that has developed around injunctive relief apply in the context of a motion for stay pending appeal. The parties have not provided, and the court has not found, a case holding otherwise.

4

(2008), the Fourth Circuit recently changed the approach district courts in this circuit must use when applying the above factors. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (2009), *vacated on other grounds*, — U.S. —, 130 S. Ct. 2371 (2010). Prior to *Winter*, the Fourth Circuit employed the so-called "hardship balancing test," in which the district court balanced the hardships to each party before proceeding to examine the likelihood of success on the merits factor. *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 194 (4th Cir. 1977); *Direx*, 952 F.2d at 811. Under the hardship balancing test, where the balance of harms tipped decidedly in favor of the moving party, the moving party could make a lesser showing on the likelihood of success on the merits factor. *Blackwelder*, 550 F.2d at 194-95; *Direx*, 952 F.2d at 813.

In *Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342 (4th Cir. 2009), *vacated on other grounds*, — U.S. —, 130 S. Ct. 2371 (2010), the Fourth Circuit acknowledged that the *Winter* decision effectively overruled the hardship balancing test. *Id.* at 347 ("Because of its differences with the *Winter* test, the *Blackwelder* balance-of-hardship test may no longer be applied in granting or denying preliminary injunctions in the Fourth Circuit . . . ."). Now, the moving party must independently satisfy all four requirements for a preliminary injunction, and the district court should not balance the four factors. *Winter*, 555 U.S. at 22 (explaining that awarding injunctive relief on a lesser showing of "possible" irreparable harm is impermissible, even if the moving party has demonstrated likelihood to succeed on the merits); *Real Truth*, 575 F.3d at 346-47 ("[W]hile *Winter* articulates four requirements, each of which must be satisfied as articulated, [the hardship balancing test] allows requirements to be conditionally redefined as other requirements are more fully satisfied . . . .").

5

Thus, the Fourth Circuit in *Real Truth* held that the moving party must make a "clear showing" on all four requirements before the court may order injunctive relief. *Real Truth*, 575 F.3d at 346-47. The Court in *Winter* also emphasized that district courts should "pay particular regard" to the fourth factor, whether granting injunctive relief is in the public interest. *Winter*, 555 U.S. at 24 (explaining "courts of equity should pay *particular regard* for the public consequences in employing the extraordinary remedy of injunction" (quoting *W. Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982))).

## B. Likelihood of success on the merits

The Note Holders' "likelihood of success on the merits" depends on the likelihood the bankruptcy court erred when it denied the Note Holders' motion to dismiss and confirmed Burcam's modified plan. The Note Holders' principle argument on appeal is that Burcam's classification scheme, which placed Note Holder-purchased unsecured claims in a separate class allegedly for the sole purpose of manipulating the vote on the plan, is not permitted under the Bankruptcy Code and Fourth Circuit precedent.

The Bankruptcy Code provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). Conversely, the statute does not require that every similar claim be placed in the same class and the debtor has some flexibility in classifying the claims into separate classes. *In re Grandfather Mountain Ltd., P'ship*, 207 B.R. 475, 483 (Bankr. M.D.N.C. 1996); *In re Deep River Warehouse, Inc.*, No. 04-52749, 2005 WL 2319201, at *4 (Bankr. M.D.N.C. Sept. 22, 2005). However, the debtor's flexibility in creating the classes is not unlimited, and it is well settled in the Fourth Circuit that the debtor may not separately

6

classify similar claims solely to manipulate the vote on the plan. *In re Bryson Props. XVIII*, 961 F.2d 496, 502 (4th Cir. 1992) ("[A]lthough separate classification of similar claims may not be prohibited, it 'may only be undertaken for reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class of claims.'" (quoting *In re Greystone III Joint Venture*, 948 F.2d 134, 139 (5th Cir. 1992))). Where "[t]he classification is clearly for the purpose of manipulating voting[,]" the plan "may not stand." *Id.*

Here, the Bankruptcy Court found that Burcam had articulated a legitimate business justification for placing the unsecured claims purchased by the Note Holders in a separate class, which was independent of Burcam's interest in plan confirmation. *In re Burcam Capital II, LLC*, 2013 WL 593709, at *4. Burcam's stated justification for separating the claims in this manner was that it needed to maintain its business relationships with trade creditors by paying those claims on a shorter time frame than the unsecured claims held by a large secured creditor. *Id.* Once the Note Holders bought the majority of the unsecured claims, Burcam argues, those claims became materially different than the claims held by the trade creditors because now the claims were held by a large, oversecured creditor. *Id.* According to Burcam, the identity of the holder of the unsecured claim (*e.g.*, large secured creditor or smaller unsecured trade creditor) warrants separate classification and separate treatment under the plan.

The Bankruptcy Court agreed with this reasoning. Relying on the justification that "paying [trade] creditors quickly fosters relationships for future business" and that this "rationale simply does not apply" to the Note Holder-purchased unsecured claims, the Bankruptcy Court rejected the Note Holders' argument that Burcam changed the classifications solely to manipulate the voting. *Id.* at *4; *see also Grandfather Mountain*, 207 B.R. at 484 (explaining that debtor's

7

separate classification for unsecured trade creditor claims is a legitimate business justification); *In re Deep River Warehouse*, 2005 WL 2319201, at *4 ("If the two classes received different treatment under the Plan, for legitimate reasons, then the separate classification might be viewed in a different light.").

In light of the facts presented to the court on the motion to stay,[6] the court cannot say that Burcam has provided a legitimate business reason for separate classification. While it is true that paying trade creditors quickly in general may foster relationships and future business, the court is not presented with any evidence that this is a proper business justification in this specific case. Both the Bankruptcy Court's Order and the Note Holder's brief on the motion to stay indicate that only two unsecured creditors voted in favor of the plan. *In re Burcam Capital*, 2013 WL 593709, at *1; Mem. in Support of Mot. for Stay Pending Appeal [DE-10] at 7. And those creditors both voted in favor of the original plan, which included payment to them and the purchased unsecured claims in the same monthly amount and on the same time frame. There is no indication, for example, that those creditors will stop doing business with Burcam unless they are paid on the time frame proposed in the modified plan.

The remaining fifteen unsecured creditors whose claims are classified separately from the purchased claims failed to submit ballots on the original plan. Presuming these unsecured claimants are also "trade creditors," the court is not convinced that a legitimate business

_____

[6] The court notes that the facts it must rely on at this stage are primarily those contained in the briefing on the motion to stay. In light of the emergency nature of this motion, the court has not had time to review the voluminous record on appeal. While the court here is finding that the Note Holders have shown a likelihood of success on the merits, the court notes that it is doing so on an extremely limited record. Nothing in this Order should be construed as an ultimate decision on the merits of the appeal itself.

8

justification exists for classifying these claimants separately from the Note Holders' unsecured claims. These creditors' claims total approximately $7,880.23 worth of claims in this approximately $15 million bankruptcy case. *In re Burcam Capital*, 2013 WL 593709, at *1. The court highly doubts that paying these claims faster than the institutional creditors' unsecured claims is necessary for an effective reorganization or is necessary to foster sufficient business goodwill to maintain Burcam's revenue streams.[7]

Burcam's purported business justification should also be contrasted with the likelihood that Burcam separated the unsecured creditors for the sole purpose of manipulating the vote on the plan. *See In re Bryson Props.*, 961 F.2d at 502 ("In this case, Bryson has failed to offer any reason for separate classification of the unsecured claims which will withstand scrutiny. The classification is clearly for the purpose of manipulating voting and it may not stand."); *In re Deep River Warehouse*, 2005 WL 2319201, at *7 ("Although the Court understands and recognizes that reasons may exist to separately classify deficiency claims and trade creditor claims, the Debtor in this case has failed to provide important indicia that the motive behind the separate classification is non-manipulative."). After Burcam learned that the Note Holders had purchased enough unsecured claims to block confirmation of the plan, Burcam submitted a proposed modified plan in which all the purchased unsecured claims were placed in a separate class. This created a classification system in which at least one class of impaired creditors would vote for the plan, as required by 11 U.S.C. § 1129(a)(10) for plan confirmation. On the current record before

---

[7] The court also notes that the Note Holders have consented to immediate payment of the remaining unsecured claims out of Burcam's cash collateral. This issue will be addressed in more detail below.

9

the court, the court finds it highly likely that Burcam proposed this classification scheme for the sole purpose of manipulating the vote to confirm the plan.

For the foregoing reasons, the court finds that the Note Holders have shown a likelihood of success on the merits. If Burcam's proposed modified classification was not proposed for a legitimate business reason, then Burcam has no accepting impaired class and the Note Holders' motion to dismiss should have been allowed. The court reiterates here that this decision is based solely on the parties' briefing and the Bankruptcy Court's order. The holding is limited to the Note Holder's motion to stay and should not be considered dispositive of the merits of the appeal.

## C. Irreparable harm

The Note Holders' primary argument with respect to irreparable harm is that its appeal will become equitably moot if the court denies the stay.[8] Before the court addresses whether the potential loss of appellate rights constitutes irreparable injury, the court must analyze whether there is a significant chance the Note Holders will lose their appellate rights absent a stay pending appeal. In *MAC Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622 (4th Cir. 2002), the Fourth Circuit held that equitable mootness "is based on practicality and prudence [and] its application does not employ rigid rules." *Id.* at 625. However, the court provided the following factors that may be considered:

---

[8] The court agrees with Burcam that the Note Holders' statement, "[a]mong other things, the Plan provides for the vesting of the Property, equity interests and management rights on or shortly after the Plan is confirmed" is not sufficient to show irreparable harm. Mem. in Support of Mot. for Stay Pending Appeal [DE-10] at 7. While it may be true that these property interests and management rights will vest when the plan is confirmed, the Note Holders have entirely failed to show how that vesting causes harm to the Note Holders. This is especially so where the Chapter 11 plan proposes full payment to the Note Holders over the course of the plan, and the Note Holders are oversecured.

10

(1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties.

*Id.*

Turning to the first factor, the Note Holders sought a stay in the Bankruptcy Court, but it was denied. In *MAC Panel*, the Fourth Circuit specifically cited the moving party's failure to renew its motion for a stay in the district court as a factor weighing in favor of a finding that the appeal was equitably moot. *MAC Panel*, 283 F.3d at 625 (explaining that the moving party's failure to apply for a stay in the district court "allowed the reorganization plan to go into effect, taking the risks that attended such a decision."). Here, the Note Holders have pursued a stay in the Bankruptcy court and before this court, and this court is not bound by the Bankruptcy court's decision denying the stay. *See id.*

Turning to the second factor, the court must consider whether the plan will be substantially consummated during the pendency of the appeal. The Bankruptcy statute defines substantial consummation as

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).

In this case, where the record on appeal is voluminous and the parties have not completed their briefing, the appellate process could potentially take six months. The appeal could take even longer if this court's decision is appealed to the Fourth Circuit. The court finds that it is

11

highly likely the debtor will have transferred all of the property proposed to be transferred under the plan and that distribution under the plan will have commenced during the pendency of the appeal. *Id.* § 1101(2)(A), (C). The Plan has been confirmed, and it calls for payment in full to some unsecured creditors within 120 days of the effective date and sets a payment plan for the Note Holders. *In re Burcam Capital*, 2013 WL 593709, at *1. Nothing in the record indicates that the distribution under the plan will not commence until the appeal is finalized. Furthermore, the debtor has already assumed management of the property dealt with by the plan. *See id.* at *6. Thus, the court finds the plan will likely be substantially consummated absent a stay pending appeal.

Turning to the third and fourth factors in the equitable mootness analysis, the appeal may be dismissed as equitably moot if the relief requested on appeal would affect the success of reorganization and adversely affect third parties. *MAC Panel*, 283 F.3d at 625-26. The court finds these factors easily satisfied.[9] The Note Holders requested relief on appeal is that the district court reverse the bankruptcy court's denial of their motion to dismiss the Chapter 11 case in its entirety. Assuming the court reverses the bankruptcy court with instructions to dismiss the case, the entire (substantially consummated) reorganization would have to be undone. This

---

[9] The court recognizes that the Bankruptcy Court found that the potential the appeal would be equitably moot was not an issue because no third party interests would be adversely affected if the order confirming the plan was reversed. *In re Burcam Capital II*, 2013 WL 1187882, at *1. While it is true that no creditor third party interests would be affected by undoing a substantially consummated reorganization of Burcam because the Note Holders have agreed to full payment of all the non-purchased unsecured claims, it is entirely possible than non-creditor third party interests would be affected. Burcam has explained that it intends to renegotiate existing leases and attract new leases as it makes payment pursuant to the Chapter 11 plan. Resp. in Opp'n to Mot. for Stay Pending Appeal [DE-18] at 2. If the Order confirming the plan is reversed and the Note Holders choose to foreclose, these leases will have to be undone. *See MAC Panel*, 283 F.3d at 626 (dismissing appeal as equitably moot partly because "relief would require the court to undo current banking and trade arrangements entered into by third parties in reliance on the success of the reorganization plan").

would obviously "affect the success of reorganization." In addition, the rights of existing tenants and new tenants may be adversely affected if the plan is undone and the Note Holders choose to foreclose. Assuming the plan is substantially consummated, reaching back in time and allowing the motion to dismiss would undo the reorganization completely and would obviously affect the rights of all the parties who relied on the reorganization plan. Thus, because the plan will likely be substantially consummated during the pendency of the appeal, the relief requested on appeal will affect the success of the reorganization and will adversely affect the rights of third parties, there is a strong probability the Note Holders's appeal will become equitably moot if a stay is not allowed.

However, a finding that the appeal will likely become equitably moot if the court does not allow the stay does not end the inquiry with respect to irreparable harm. The cases reveal a significant divide on the question of whether the loss of appellate rights is per se irreparable harm. Many courts have found that the loss of appellate rights, standing alone, is not sufficient to show irreparable injury. *See, e.g.*, *In re MAC Panel Co.*, 2000 WL 33673784, at *4; *In re Sunflower Racing, Inc.*, 223 B.R. 222, 225 (D. Kans. 1998); *In re Asheville Bldg. Assocs.*, 93 B.R. 920, 923 (W.D.N.C. 1988); *In re Kent*, 145 B.R. 843, 844 (Bankr. E.D. Va. 1991). On the other hand, a number of courts have reasoned that appeals as of right are a significant legal protection in the U.S. judicial system and the loss of that right, at least in the context of a significant claim of error, constitutes per se irreparable harm. *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 347-49 (S.D.N.Y. 2007); *In re Permian Producers Drilling, Inc.*, 263 B.R. 510, 522 (Bankr. W. D. Tex. 2000); *In re County Squire Assocs. of Carle Place,*

*L.P.*, 203 B.R. 182, 183 (2d Cir. BAP 1996) (referring to loss of appellate rights as

"quintessential" form of irreparable harm).

The court agrees that the loss of appellate rights alone constitutes irreparable harm. In a comprehensive discussion of the issue, the District Court for the Southern District of New York explained,

> [t]he ability to review decisions of the lower courts is the guarantee of accountability in our judicial system. In other words, no single judge or court can violate the Constitution and laws of the United States, or the rules that govern court proceedings, with impunity, because nearly all decisions are subject to appellate review. At the end of the appellate process, all parties and the public accept the decision of the courts because we, as a nation, are governed by the rule of law. Thus, the ability to appeal a lower court ruling is a substantial and important right.

*In re Adelphia*, 361 B.R. at 342. The court finds this reasoning entirely persuasive and adopts it herein. Our system of Government ensures that litigants are entitled to appellate review of orders from lower courts that affect their substantial rights. For this reason alone, the court is inclined to find that the Note Holders will be irreparably harmed if the court denies their motion to stay. Denying the stay likely results in the Note Holders losing their right to appellate review of the bankruptcy order confirming the plan, a significant, valuable right in our system of Government.

The court recognizes that this holding is at odds with a number of bankruptcy decisions in this circuit. These courts have held that the loss of appellate rights, standing alone, is not sufficient to show irreparable harm. *In re MAC Panel Co.*, 2000 WL 33673784, at *4; *In re Asheville Bldg. Assocs.*, 93 B.R. at 923-24; *In re Kent*, 145 B.R. at 843. However, even assuming the loss of appellate rights does not constitute per se irreparable harm, the court finds that the Note Holders have made a sufficient showing of irreparable harm in this case. The Note Holders are arguing that the bankruptcy court erred when it denied its motion to dismiss the

14

Chapter 11 case altogether, and that the proposed plan does not comply with key provisions of the Bankruptcy Code. As the largest creditor in the case by far, the Note Holders have a substantial interest in review of that decision on appeal. Where the creditor can make a strong showing that the appeal will be equitably moot if the stay is denied, the creditor has the largest interest in the case by far, and the creditor is arguing that the Chapter 11 plan cannot be confirmed under the Bankruptcy Code, the court finds that the loss of appellate rights constitutes irreparable injury. Denying the stay in this case results in an "actual and imminent" harm because the loss of appellate rights is virtually assured and the appellate issue in the case involves a significant legal question that will substantially affect the Note Holders rights in the case. *See Direx*, 952 F.2d at 812 (explaining the harm must be "actual and imminent," and not "remote" nor "speculative"); *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) (same).

## D. Whether the balance of equities tips in the moving party's favor

Prior to balancing the equities, the court must first define the harm to the non-moving party of allowing a stay pending appeal. *Winter*, 555 U.S. at 24. Here, Burcam indicates that a stay pending appeal will harm its business prospects. Burcam alleges that its ability to renegotiate long-term leases on the property and attract new tenants will be impaired because a stay would create uncertainty about Burcam's prospects for emerging from bankruptcy successfully. According to Burcam, negotiating long-term commercial leases on the property is critical for its continued business success.

While Burcam does not specifically identify other potential harms, the court notes that a stay can create additional difficulties for Burcam. The cost, including attorney's fees, of

15

remaining in bankruptcy throughout the appellate process is one such harm. Either party may appeal this court's decision to the Fourth Circuit. Thus, it is possible Burcam can remain in bankruptcy without any confirmed plan for many additional months before a final decision in the case is reached, which will substantially increase the fees associated with administering the bankruptcy estate. *In re MAC Panel Co.*, 2000 WL 33673784, at *5. Additionally, the stay may harm Burcam's relationship with the creditors who will receive payments under the plan because those payments will be delayed as well. *Id.* at *6.

While the court recognizes that these are real and significant hardships for Burcam, the court nevertheless is persuaded that the balance of the equities tips in the Note Holders' favor. As explained, denying the motion to stay likely prevents meaningful appellate review of the bankruptcy court's order confirming the Chapter 11 plan. The Note Holders are essentially the only creditor in this case. The Note Holders have a secured claim totaling approximately $15 million, and they have purchased approximately sixteen of the thirty-three unsecured claims. Fifteen of the remaining seventeen unsecured claims total approximately $7,880.23 and the Note Holders have consented to payment in full of all the non-purchased unsecured claims notwithstanding the stay. Thus, the creditor owning the overwhelming majority of claims has objected to the plan, that objection has been overruled and the plan has been confirmed, and now that creditor has appealed. Under these circumstances, the Note Holder's ability to obtain appellate review of a decision that in essence effects only them, is significant.

On Burcam's side, the court absolutely agrees that it will be more difficult to negotiate long-term commercial leases in bankruptcy than out of it. However, the court also notes that Burcam has been able to maintain its business relationship and revenue streams as the Debtor in

16

Possession, at least to some extent, since it filed the case on June 28, 2012. Otherwise, the Chapter 11 plan would not have been confirmed. That Burcam has been profitable as a Debtor in Possession suggests that the business difficulties of remaining in bankruptcy are not overly burdensome to Burcam. In sum, the problems negotiating current leases and attracting new tenants, the costs to Burcam of remaining in bankruptcy throughout the appellate process, and the interests of the few unsecured creditors who hold claims that have not been purchased by the Note Holders[10] simply do not outweigh the Note Holders' interest in meaningful appellate review of the confirmed plan, in the court's estimation.

## E. The public interest

Finally, the court must consider whether allowing the stay will be in the public interest. As noted, the Supreme Court has recently emphasized the importance of analyzing this factor. *Winter*, 555 U.S. at 24; *Real Truth*, 575 F.3d at 347. Burcam cites to the "expedient administration of the bankruptcy estate" and the stabilization of its leases with current and future tenants as reasons why denying the stay will be in the public interest.

The court is not convinced that stabilization of Burcam's position in the bankruptcy process is in the public interest. It is obviously in Burcam's interest and in the current tenants' interest that Burcam can negotiate commercial leases. However, Burcam has made no showing that their ability to negotiate leases will serve the public interest beyond the immediate parties to the case. The court agrees that expedient administration of the bankruptcy estate is in the public

---

[10] The court notes that the Note Holders will consent to immediate payment of the remaining unsecured claims that have not been purchased by the Note Holders from Burcam's cash collateral. Thus, the interest of these unsecured creditors in plan confirmation is essentially extinguished, other than the potential effect a stay may have on future disbursements of credit. The court will ALLOW immediate payment of these unsecured creditors, notwithstanding the stay.

interest. However, in the court's estimation, the public interest in correcting legal errors in the bankruptcy court outweighs the interest in the efficient administration of the estate.

As explained above, denying a stay in this case will likely moot appellate review of the bankruptcy court's order. The ability to appeal the bankruptcy court's order is a "substantial and important right." *In re Adelphia*, 361 B.R. at 342. Especially in the context of this case, where the only major creditor has objected to the plan and that creditor has consented to immediate payment in full of all the unsecured claims it has not purchased, the "efficient administration of the estate" cannot outweigh the public interest in ensuring appellate review for essentially the only creditor in the case. While it is true that remaining in bankruptcy "limbo" may cause some problems for Burcam and its tenants, in the court's estimation the public interest is better served by ensuring the Note Holders' ability to appeal a significant ruling affecting the entire bankruptcy case.

## CONCLUSION

Because the Note Holders have satisfied all four requirements for a stay pending appeal, the motion to stay [DE-9 in 5:13-CV-278-F, DE-10 in 5:13-CV-279-F] the bankruptcy court proceedings is ALLOWED. It is hereby ORDERED that the Bankruptcy Court's orders dated February 15, 2013 and February 26, 2013 in Bankruptcy case no. 12-04729-8-JRL are STAYED pending appeal. The court hereby STAYS the Chapter 11 Plan confirmed by the Bankruptcy Court in case no. 12-04729-8 entirely, including any future payments called for under the plan. In general, the parties should resume their respective bankruptcy positions held immediately before the Chapter 11 plan was confirmed. The parties may apply to this court if any modifications to those positions are needed. However, the court ALLOWS payment of the

18

remaining unsecured claims that have not been purchased by the Note Holders out of Burcam's cash collateral. The court finds that no appeal bond is necessary in this case because payment to these unsecured creditors leaves the Note Holders as the only potential creditor harmed by the stay.

The consent motion to change the caption of the case [DE-17 in 5:13-CV-278-F, DE-19 in 5:13-CV-279-F] is ALLOWED and the Clerk of Court is DIRECTED to change the caption of both cases [5:13-cv-278, 5:13-CV-279] to the caption the parties provide in their motion [DE-17, 5:13-CV-278-F]. The parties are DIRECTED to use the new caption on any filings submitted after the date of this order. The consent motion to consolidate the appeals [DE-17 in 5:13-CV-278-F, DE-19 in 5:13-CV-279-F] is also ALLOWED. From this point forward, every filing in case number 5:13-CV-278-F is deemed filed in 5:13-CV-279-F. The parties are DIRECTED to submit all of their filings in this appeal in case number 5:13-CV-278-F only. If there are any motions in 5:13-CV-279-F that have not been filed in 5:13-CV-278-F as well and that still require consideration by the court, the parties are DIRECTED to re-file those motion in 5:13-CV-278-F.

Finally, Burcam's motions to voluntarily dismiss its cross appeals [DE-21 in 5:13-CV-278-F, DE-22 in 5:13-CV-279-F] are ALLOWED. Burcam's cross appeals [DE-2 in 5:13-CV-278-F, DE-2 in 5:13-CV-279-F] are hereby DISMISSED.

SO ORDERED.

This the $\underline{2^6}$ day of June, 2013.

_____

JAMES C. FOX
Senior United States District Judge